UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| SPRINGSTONE, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:19-CV-821-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| HISCOX INSURANCE COMPANY ) | **ORDER** |
| INC., ) | |
| ) | |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Hiscox Insurance Company, Inc.'s Motion to Dismiss. [R. 4] Plaintiff has responded [R. 8], and Defendant filed a brief in reply [R. 11]. Therefore, this matter is ripe for review. For the following reasons, Defendant's Motion is granted, and Plaintiff's claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### I.   Background Facts[1]

Plaintiff Springstone, Inc. ("Springstone"), through its wholly owned subsidiaries, is a behavioral health provider with several facilities, headquartered in Louisville. [R. 1-2 p. 4 ¶¶ 6–7] Hiscox Insurance Company, Inc. ("Hiscox") is an insurance provider. [*Id.* ¶ 8] In January, 2017, Springstone obtained an insurance policy from Hiscox, Policy Number UVA1490983.17 (the "Policy"), which included a Directors & Officers Liability Coverage Part ("D&O Coverage"). [*Id.* p. 5 ¶¶ 9–10] The Policy included two agreements relevant here.[2] First, the Policy includes Company Reimbursement Coverage ("Coverage B"), which covers:

---

[1] Because this action is before the Court on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts in the light most favorable to the Plaintiff, and all following factual allegations are taken from the Complaint or are undisputed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Court may consider the attachments to Plaintiff's Complaint without converting the Motion to Dismiss as one for summary judgment, particularly given that they are referred to in the Complaint and are central to its claim. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

> The Loss of a Company arising from a Claim first made against an Individual Insured during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of such Individual Insured, but only when and to the extent that such Company has indemnified such Individual Insured for such Loss.

[R. 1-2 p. 28]  Second, the Policy includes Company Coverage ("Coverage C"), which covers:

> The Loss of a Company arising from a Claim first made against a Company during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of a Company.

[*Id.*]  The Policy also has the following Exclusion in the D&O Coverage in Section IV:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
>
> Q.   with respect to Coverage C only:
>
> (vi)   seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim.

[*Id.* pp. 35, 38–39]  The Policy Period ran from January 13, 2017 to October 8, 2017. [*Id.* p. 7 ¶ 19]

On July 25, 2016, a *qui tam* lawsuit was filed under seal against Springstone in the Southern District of Ohio (the "Qui Tam Complaint"). [*Id.* p. 7 ¶ 20; *see also id.* pp. 132–160 (the Qui Tam Complaint)]  The Qui Tam Complaint claimed that Springstone had violated the False Claims Act by obtaining reimbursement from Medicare and Medicaid for medically unnecessary services that it provided to patients. [*Id.* p. 8 ¶ 21]  On July 25, 2017, the Office of the Inspector General for the Department of Health and Human Services ("OIG") issued a subpoena (the "Subpoena") to Springstone as part of its investigation of the *qui tam* action filed against Springstone. [*Id.* ¶¶ 23–25; *see also id.* pp. 161–92 (the Subpoena)]  The Subpoena requested documentation regarding Springstone's patient treatment and management practices. [*Id.* p. 8 ¶ 24]

On October 6, 2017, Springstone notified Hiscox of the Subpoena, seeking coverage for

its response to the Subpoena under the D&O Coverage. [*Id.* p. 9 ¶ 26; R. 8 p. 4]  Hiscox denied coverage for Springstone's response to the OIG Subpoena, noting that there was no "Claim" as defined by the Policy, nor did the Subpoena allege a "Wrongful Act." [R. 1-2 p. 9 ¶ 27; *id.* pp. 193–96]  Springstone obtained services from the law firm Alston & Bird to assist in responding to the Subpoena and incurred substantial costs. [*Id.* ¶¶ 29–30]  On January 21, 2019, the *qui tam* lawsuit was dismissed, and the Qui Tam Complaint was unsealed. [*Id.* pp. 9–10 ¶ 32]  On January 22, 2019, Springstone again sought coverage for its expenditures made responding to the Subpoena. [*Id.* p. 9 ¶ 31; *id.* pp. 198–215]  After receiving notice of the Qui Tam Complaint, Springstone notified Hiscox of its existence [*Id.* p. 10 ¶ 33; *id.* pp. 218–21]  Hiscox again denied coverage. [*Id.* p. 10 ¶ 34]

On October 9, 2019, Springstone filed the present action against Hiscox in Jefferson Circuit Court. [R. 1-2]  Springstone alleges breach of contract, seeks a declaration of rights under the insurance agreement, claims common law bad faith, violations of the Kentucky Unfair Claims Settlement Practices Act and Kentucky Consumer Protection Act, unjust enrichment, and seeks punitive damages. [R. 1-2 pp. 12–17]  Hiscox timely removed the action to this Court, and filed its Motion to Dismiss. [R. 1; R. 4]  Hiscox argues that neither Coverage C nor Coverage B covers Springstone's costs relating to the Subpoena, and that Coverage C specifically excludes non-monetary relief.  It further argues that Springstone's statutory and common law claims fail because it was justified in denying Springstone's claim.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action if the Complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  The moving party has the burden of proving that no claim exists. *Total Benefits Plan. Agency Inc. v.*

*Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  While the Complaint must be liberally construed in favor of the non-moving party, "it is still necessary that the Complaint contain more than bare assertions or legal conclusions." *Id.* (citing *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)) (other citations omitted).  Moreover, the Court need not accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is factually plausible if the Complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this plausibility standard, the Complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

### III.    Discussion

As this is a diversity case, the Court applies Kentucky law, which the Parties do not dispute.  Under Kentucky law, interpretation and construction of insurance contracts is a matter of law for the Court to decide. *Kemper Nat. Ins. Cos. V. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002).  The party seeking to establish coverage bears the burden of establishing that the policy covers the incident at issue, but insurers bear the burden of establishing that an exclusion bars coverage. *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 714–15 (W.D. Ky. 2010).  Kentucky law instructs courts to construe insurance contracts liberally and resolve doubts in favor of the insured. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008) (citing *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 877–78 (Ky. 2006)).  This includes

strictly construing exceptions and exclusions. *Id.* (citing *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005)); *see also Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859–60 (Ky. 1992).

However, "[t]he words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning. The trial court must give effect to what the parties expressly agreed upon instead of plac[ing] a strained interpretation thereon contrary to the intent of the parties. . . . Policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and [s]uch mutual intention is to be deduced, if possible, from the language of the contract alone." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999) (internal citations and quotation marks omitted) (interpreting insurance policy exclusion); *see also Kentucky Ass'n of Ctys. Workers' Comp. Fund v. Cont'l Cas. Co.*, 157 F. Supp. 3d 678, 682 (E.D. Ky. 2016) ("[d]espite a policy inclination of favoring the insured, however, [t]he rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the plain meaning and/or language of the contract. Insurance policies, like statutes, must receive a sensible construction. Indeed, Kentucky courts have recognized that a liberal interpretation [of an insurance policy] is not synonymous with a strained one. Thus, courts should not rewrite an insurance contract to enlarge the risk to the insurer. Rather, where the language of the policy is not ambiguous, it should not be construed to mean anything other than what it says.") (internal quotation marks and citations omitted) (applying Kentucky law).

### A.     Coverage B – Company Reimbursement Coverage

First, the Court will determine whether Coverage B covers Springstone's response efforts to the Subpoena. Coverage B provides that Hiscox shall pay:

> [T]he Loss of a Company arising from a Claim first made *against an Individual Insured* during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of such Individual Insured, *but only* when and to the extent that such Company has indemnified such Individual Insured for such Loss.

[R. 1-2 p. 28 (emphasis added)]  The Policy defines a "Claim" in three ways:

> (i)    A written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations);
>
> (ii)   A civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:
>
> (1) service of a complaint or similar pleading;
>
> (2) return of an indictment, information or similar document (in the case of a criminal proceeding); or
>
> (3) receipt or filing of a notice of charges; or
>
> (iii)  *a civil, criminal, administrative or regulatory investigation of an Individual Insured*:
>
> (1) *once such Individual Insured is identified in writing by such investigating authority as a person against whom a proceeding described in subparagraph (ii) of this Definition may be commenced*; or
>
> (2) in the case of an investigation by the Securities Exchange Commission ("SEC") or a similar state or foreign government authority, after:
>
> (a)    the service of a subpoena upon such Individual Insured; or
>
> (b)    the individual insured is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of laws by such Individual Insured.
>
> The term "Claim" shall also include any Securities Claim and, with respect to Coverage E above, any Derivative Demand.

[*Id.* p. 29 (emphasis added)]  The Policy defines an Individual Insured as any 1) Executive of a Company, 2) Employee of a Company, or 3) Outside Entity Executive. [*Id.* p. 31]

Defendant argues that Coverage B is inapplicable because no Individual Insured was ever identified in writing by the government as required by subsection (iii)(1) of the Claim definition (and thus there is no Claim), and also because Springstone never indemnified any Individual Insured as required by Coverage B. [R. 4-1 p. 15] While Springstone appears to concede that the Subpoena does not identify any Individual Insured in writing, it claims that the Subpoena was part of an investigation against its employees and executives and was therefore a Claim against them. Springstone attaches an email sent by its counsel that identified potential custodians of records responsive to the Subpoena. [R. 1-2 pp. 201–203] Springstone also references a memorandum from then-Deputy Attorney General Sally Yates (the "Yates Memo"), which emphasized prioritizing prosecuting individuals responsible for corporate fraud. [R. 1-2 pp. 204–15] Springstone argues that the Yates Memo's emphasis on prosecuting individuals involved with corporate wrongdoing shows that the Subpoena was part of an investigation of the Individual Insureds (executives and employees), and thus a claim against them. [R. 8 pp. 18–19]

First, the plain language of the Subpoena itself (the only written document identified as from the OIG) fails to identify any "Individual Insured . . . against whom a proceeding described in subparagraph (ii) of this Definition may be commenced." [R. 1-2 p. 29] Thus, the plain language of the Policy bars coverage. See *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999). Further, Springstone's attachment of its own counsel's letter concerning potential custodians of the records requested in the Subpoena, for obvious reasons, falls well short of being an "identif[ication] in writing by [the OIG] as a person . . . ." [*Id.*] Moreover, The Yates Memo, cited by Springstone, is irrelevant. It simply expresses the general policy of the DOJ concerning such investigations.

Even accepting Springstone's assumption that the Yates Memo indicates that the Subpoena represented an investigation against Individual Insureds, that does not make it a Claim against any (unnamed) Individual Insured given the clear language of the Policy. An investigation against an Individual Insured is only a Claim "once such Individual Insured is identified in writing by such investigating authority as a person against whom a proceeding described in subparagraph (ii) of this Definition may be commenced." [R. 1-2 p. 29] The Subpoena identifies no such Individual Insured. Nor does Springstone identify any other writing that does. Finally, Springstone does not claim it indemnified any Individual Insured as required by Coverage B. *See* [R. 1-2 p. 28 (stating that the coverage applies "but only when and to the extent that such Company has indemnified such Individual Insured for such Loss)] The Subpoena is not a Claim against any Individual Insureds, and Coverage B is inapplicable.

      **B.**      **Coverage C**

With respect to whether Coverage C provides coverage for Springstone's costs associated with complying with the Subpoena, the first question is whether Exclusion IV.Q.(vi) (the "Exclusion") of the Policy is applicable. Hiscox argues that the Exclusion precludes coverage with respect to Coverage C—coverage for Claims made against Springstone itself. While Hiscox did not initially cite this exclusion in its denial of Springstone's claim, this does not prevent Hiscox from raising the defense now. *Peoples Bank & Trust Co. of Madison Cty v. Aetna Case. & Sur. Co.*, 113 F.3d 629, 637–39 (6th Cir. 1997). The policy provides that:

> ***The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured***:
> Q.    with ***respect to Coverage C only***:
>     (vi)    ***seeking*** fines or penalties or ***non-monetary relief against the Company***; provided, however, that this exclusion shall not apply to any Securities Claim.

[R. 1-2 pp. 35, 38–39 (emphasis added)] Springstone admits in its Complaint that the Subpoena

- 8 -

is a demand for "non-monetary relief" [R. 1-2 ¶ 36]  On its face, this exclusion applies. *See Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999); *Owners Ins. Co. v. Frontier Housing, Inc.*, 291 F. Supp. 810, 816 (E.D. Ky. 2017) (citing *Midwestern Ins. Alliance, Inc. v. Clarendon National Ins. Co.*, 7 S.W.3d 393 (Ky. Ct. App. 1999)) ("If an exclusion clearly applies and defeats the existence of coverage, the insurer has no duty to provide a defense to the insured.").

Springstone first argues that Coverage C is still applicable because the Subpoena constitutes a Claim under the Policy's third definition—as a criminal investigation of an Individual Insured. [R. 8 p. 17]  However, as previously discussed, the Subpoena is not a claim under that definition of Claim because no Individual Insureds were identified in writing. *See supra* Section III.A.

Springstone points to the Policy's definition of Loss, which states that a Loss "means the amount that any Insured becomes legally obligated to pay in connection with any covered Claim, including . . . Defense Costs." [R. 1-2 pp. 31–32]  The definition then provides that:

> ***Loss shall not include***: (i) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (ii) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed; (iii) civil or criminal fines or penalties; (iv) taxes or tax penalties (whether imposed by a federal, state, local or other governmental authority); or (v) the costs and expenses of complying with any injunctive relief or other form of non-monetary relief. ***Defense Costs shall be provided for items specifically excluded from Loss pursuant to subparagraphs (i) through (v) of this subparagraph provided such Defense Costs result from a covered Claim***.

[*Id.* p. 32 (emphasis added)]  Springstone argues that because the Policy provides that Defense Costs shall be provided for "civil or criminal fines or penalties," and "the costs and expenses of complying with any injunctive relief or other form of non-monetary relief," Defendant is liable for its Defense Costs.  Plaintiff further argues that interpreting the Exclusion to apply to those forms of relief would make that portion of the policy illusory and would not be a reasonable

construction of the Policy.

To the extent that Springstone argues that the Loss definition's provision of Defense Costs entitles it to Defense Costs regardless of the Exclusion, that argument is without merit. The definition of Loss specifically notes that Defense Costs shall be covered "provided such Defense Costs result from a covered Claim." [R. 1-2 p. 32] Exclusion IV.Q.(vi) clearly provides that claims seeking non-monetary relief are not covered Claims, meaning that Springstone is not entitled to Defense Costs for its efforts responding to the Subpoena. [R. 1-2 pp. 35, 38–39]

Springstone next argues that the exclusion should not be applied because doing so would render other parts of the Policy illusory. [R. 8 pp. 17–19] The doctrine of illusory coverage is an interpretation theory that avoids interpretations of insurance contracts that would "den[y] the insured most if not all of a promised benefit." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. App. 2018). The theory is "best applied . . . where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be nonexistent." *Id.* (internal quotations omitted). "Coverage is illusory when an insured cannot foresee any circumstances under which he or she would collect under a particular policy provision." *Gower v. Alfa Vision Ins. Corp.*, No. 2015-CA-000804-MR, 2016 WL 6819754, at *3 (Ky. App. Nov. 18, 2016); *see also Darwin Select Ins. Co. v. Ashland Hospital Corp.*, 2020 WL 748892, at *17 (Ky. App. 2020); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Papa John's Int'l, Inc.*, 29 F. Supp. 3d 961, 970 (W.D. Ky. 2014) (holding that an exclusion did not render coverage illusory because it did not *entirely* negate the policy's coverage). While exclusions are narrowly construed against insurers, insurers have the "unquestioned right to insert as many reasonable provisions in the policy exempting them from liability as they think proper or necessary." *Ritchie v. Turner*, 547 S.W.3d 145, 149 (Ky. App. 2018) (quoting *Heltsley*

*v. Life & Cas. Ins. Co.*, 185 S.W.2d 673, 675 (1945)).

In this case, the Exclusion does not implicate the doctrine of illusory coverage because there are still foreseeable scenarios under which Hiscox would be obligated to cover Defense Costs as described in the Policy's definition of Loss. *See Gower*, 2016 WL 68199754, at *3. The Exclusion specifically only applies to Coverage C, claims against the company directly. Defense Costs under any other Coverage, including Coverage B—reimbursement coverage for claims made against Individual Insureds— are still provided for under the Policy.

Springstone argues that the exclusion "would render the insurance coverage under Coverage C illusory for an entire definition of claims." [R. 8 p. 18] However, it is unclear what basis Springstone has for assuming that all three enumerated definitions of "Claim" must necessarily be applicable for every Coverage under the Policy. It points to nothing in the Policy to justify this assumption—particularly when the Exclusion is unambiguous. Further, the exclusion does not render any definition of Claim completely illusory even with respect to Coverage C. Definition II.A.(i) provides that a Claim means "a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations)." [R. 1-2 p. 29] By contrast, the exclusion only applies to "fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to Securities Claims." [*Id.* p. 39] The Exclusion clearly does not apply to Securities Claims. It also does not apply to all claims for monetary relief, only fines and penalties. This cannot be said to render definition II.A.(i) illusory.

Given the myriad of potential circumstances where Springstone would be able to recover Defense Costs under the Policy, the doctrine of illusory coverage does not apply. *See Ritchie v. Turner*, 547 S.W.3d 145, 149 (Ky. App. 2018). The clear language of Exclusion IV.Q.(vi)

applies and bars coverage for non-monetary claims against the Company, and Plaintiff itself acknowledges that the Subpoena meets that definition. As the Subpoena is also not an investigation of an Individual Insured, Coverage C does not provide coverage for any Loss Springstone incurred in responding to the Subpoena.

### D. Underlying Qui Tam Action

Springstone also claims that the underlying *qui tam* lawsuit against it constitutes a Claim under the Policy. [R. 1-2 pp. 10–11 ¶ 36] However, the Qui Tam Complaint was clearly filed before the Policy Period and is therefore not covered by the Policy. Coverage B and C both require Hiscox to pay for losses "arising from a Claim first made . . . during the Policy Period[.]" [*Id.* p. 28] The Qui Tam Complaint was filed on July 25, 2016. [R. 1-2 p. 7 ¶ 20; *id.* pp. 133–157] The Policy Period did not begin until nearly six months later on January 13, 2017 and ended October 8, 2017. [R. 1-2 p. 7 ¶ 19; *id.* p. 20]

Springstone identifies nothing in the Policy that would require Hiscox to pay for Claims made prior to the Policy Period. The Policy does provide a relation back provision within the Reporting and Notice section. [R. 1-2 p. 81] However, that section is clearly applicable to situations where the insured discovers circumstances that may give rise to a Claim in the future, not Claims that were made against it prior to the Policy Period. That section states that if an insured gives notice of circumstances which may give rise to a Claim, any <u>subsequent</u> Claim made arising out of those circumstances would be considered made at the time the insured first gave notice. [*Id.*] Nowhere does the relation back section state that Hiscox would somehow be liable for Claims made before the Policy Period. Therefore, the Policy is not applicable to the underlying Qui Tam Complaint.

### E. Remaining Claims

Hiscox moves to dismiss Springstone's remaining state claims on account that it was entitled to deny Springstone's insurance claim. [R. 4-1 pp. 17–18] Plaintiff's additional claims include a common law claim for bad faith [R. 1-2 pp. 13–14 ¶¶ 52–56], violations of the Kentucky Unfair Settlement Practices Act [*Id.* pp. 14–15 ¶¶ 57–61] and the Consumer Protection Act [*Id.* p. 16 ¶¶ 67–70] (both statutory bad faith claims), and claim for unjust enrichment [*Id.* pp. 15–16 ¶¶ 62–66].

#### i. Bad Faith Claims

Bad faith claims against insurers require proving the same three elements regardless of whether they are based on common law or statutory violations:

> (1) The insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a claim existed.

*Ehlischide v. Colonial Life & Acc. Ins. Co.*, 2005 WL 1993534, at *2 (Ky. App. 2005) (quoting *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)); *Wittmer v. Jones*, S.W.2d 885, 890 (1993). Springstone's bad faith claims fail because Hiscox simply was not obligated to pay Springstone's claims. "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson*, 25 S.W.3d at 100. As the Policy did not provide coverage for responding to the Subpoena, Hiscox was not obligated to pay Springstone's claim. Therefore, Springstone's common law and statutory bad faith claims must be dismissed.

#### ii. Unjust Enrichment

Unjust enrichment is an equitable doctrine that is not based on actual contract, "but rather upon legal fiction invented to permit recovery where 'natural justice says there should be a

recovery as if promises were made.'" *Humana, Inc. v. Cave Consulting Group, Inc.*, No. 3:13-cv-00759-JGH, 2014 WL 12911068, at *5 (W.D. Ky. Nov. 21, 2014) (quoting *Perkins v. Daugherty*, 722 S.W.2d 907, 909 (Ky. App. 1987)). To prevail under a theory of unjust enrichment a party must prove "(1) benefit conferred upon defendant at plaintiffs expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Furlong Dev. Co. LLC v. Georgetown-Scott Cty Planning and Zoning Comm'n*, 504 S.W.3d 34, 39–40 (Ky. 2016) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009)). Under Kentucky law, "unjust enrichment is unavailable when the terms of an express contract control." *Id.*; *Codell Const. Co. v. Com.*, 566 S.W.2d 161, 165 (Ky. App. 1977) ("The doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed."); *Sparks Milling Co. v. Powell*, 143 S.W.2d 75, 76 (Ky. App. 1940) ("where an express contract is made defining the circumstances under which an obligation may arise with reference to a certain subject matter such contract excludes the possibility of an implied contract concerning the same matter").

Springstone argues that regardless of whether it will be able to *recover* under a theory of unjust enrichment, it may still plead mutually exclusive claims in the alternative under the Federal Rules. [R. 8 p. 23] However, Kentucky law not only provides that plaintiffs cannot recover for unjust enrichment when there is an applicable contract, but also holds that the equitable doctrine is inapplicable entirely. *See, e.g.*, *Poynter v. Ocwen Loan Servicing, LLC*, 3:13-cv-773-DJH, 2016 WL 5380926, at *6 (W.D. Ky. Sept. 23, 2016); *Shane v. Bunzl Dist. USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) (dismissing an unjust enrichment claim that mirrored the plaintiff's breach of contract claim). Here, Springstone's unjust enrichment claim tracks its breach of contract claim: it states that it paid premiums, and Hiscox did not cover its

costs for responding to the Subpoena. [R. 1-2 ¶¶ 62–66] Because this claim simply restates its breach of contract claim, Springstone's unjust enrichment claim must be dismissed. *See Poynter*, 2016 WL 5380926, at *6.

### IV.   Conclusion

For the reasons discussed above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss is **GRANTED**.

2. Plaintiff's claims are **DISMISSED with prejudice**.

This the 5th day of August, 2020.

*[Signature: Claria Horn Boom]*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:   Counsel of record